UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JOHN DOE,<br><br>       Plaintiff,<br><br>      -against-<br><br>DONALD J. TRUMP, as President of the United States of America; JOHN F. KELLY, as Secretary of the Department of Homeland Security; THE DEPARTMENT OF HOMELAND SECURITY; LORI SCIALABBA, as Acting Director of the U.S. Citizenship and Immigration Services; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; REX W. TILLERSON, as Secretary of State; U.S. DEPARTMENT OF STATE; and THE UNITED STATES OF AMERICA,<br><br>       Defendants. | Civil Action No.: 17-cv-112<br><br>Chief Judge William M. Conley |

### PLAINTIFF'S STATEMENT OF PROPOSED RECORD FACTS IN SUPPORT OF PLAINTIFF'S RENEWED APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to the Court's Procedure to Be Followed on Motions for Injunctive Relief, Plaintiff, by and through his undersigned counsel, hereby submits the following Statement of Proposed Record Facts:

### Jurisdiction and Venue

1. This Court has subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 because this action arises under Article II of the United States Constitution, the First Amendment to the United States Constitution, the Fifth Amendment to the United States Constitution, the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1152, 1182(f), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.

2. Plaintiff's action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rules 57 and 65 of the Federal Rules of Civil Procedure.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this district. *See* Declaration of John Doe in Support of His Renewed Application for a Temporary Restraining Order and Preliminary Injunction ("Doe Decl.") ¶¶ 21–22.

**Parties**

4. Plaintiff John Doe, who resides in the Western District of Wisconsin, is a Sunni Muslim asylee who was granted asylum status in May 2016. Doe Decl. ¶¶ 2, 20–21.

5. Defendant Donald J. Trump is President of the United States. President Trump signed both executive orders that are the subject of this action. He is sued in his official capacity.

6. Defendant John F. Kelly is the Secretary of the Department of Homeland Security. Defendant Kelly is responsible for implementing the INA and the Executive Order that is the subject of this action. He is sued in his official capacity.

7. Defendant Department of Homeland Security ("DHS") is a cabinet department within the U.S. federal government. Its functions include regulating entry into the United States and granting asylees prior approval to travel internationally. It is also responsible for implementing and enforcing the Immigration and Nationality Act.

8. Defendant Lori Scialabba is the Acting Director of the U.S. Customs and Immigration Services. She is sued in her official capacity.

9. Defendant U.S. Customs and Immigration Services ("USCIS") is an agency within DHS whose primary functions include adjudication of asylum and derivative asylum claims.

10. Defendant Rex W. Tillerson is the U.S. Secretary of State. The Secretary of State has authority to determine and implement certain asylum procedures for non-citizens. Defendant Tillerson is sued in his official capacity.

11. Defendant U.S. Department of State ("State Department") is responsible for, *inter alia*, facilitating issuance of visas for asylees and derivative asylees seeking entry into the United States.

### Plaintiff's Derivative Asylum Petition

12. Plaintiff legally resides in the United States, having been granted asylum status by USCIS in 2016. *See* Doe Decl. ¶¶ 13–15, 20–21.

13. Shortly after receiving asylum status, Plaintiff filed two Refugee/Asylee Relative Petitions (also known as derivative asylum petitions) with USCIS on Form I-730 for his wife and three-year-old daughter. Doe Decl. ¶¶ 21–22.

14. USCIS was duly processing Plaintiff's Refugee/Asylee Relative Petitions until President Trump's issuance of Executive Order 13769, "Protecting the Nation from Foreign Terrorist Entry into the United States," dated January 27, 2017. Dkt. No. 13 ¶ 15; Dkt. No. 23 at 5–6.

15. In filings with this Court, the Government confirmed that provisions of the first executive order barred the processing of derivative asylum petitions. Dkt. No. 23 at 6 ("Following the signing of the Executive Order of January 27, 2017, Defendants endeavored to comply with the mandate . . . .").

3

16. The Government further represented that, after the TRO was entered in *Washington v. Trump*, No. C17-014JLR, 2017 WL 462040 (W.D. Wash. Feb. 3, 2017), USCIS "resumed" processing derivative asylum petitions. Dkt. No. 23 at 6 ("[P]rocessing of Form I-730 derivative asylum petitions—such as Plaintiff's—*resumed* when the injunction was issued." (emphasis added)).

17. USCIS has approved both of his petitions and is in the process of transferring them to the National Visa Center for routing to the U.S. Embassy in Amman, Jordan. *See* Second Declaration of Andrew B. Breidenbach in Support of Plaintiff's Renewed Application for a Temporary Restraining Order and Preliminary Injunction ("Second Breidenbach Decl.") Ex. UU.

18. That stage is the final portion of the derivative asylum process; but for the Executive Order (described below), the U.S. Embassy would interview Plaintiff's wife and child upon receipt of the completed petitions, and, if approved, the Government would issue travel documents permitting them to enter the United States. Second Breidenbach Decl. Ex. TT.

19. The Government represented that the remaining portion of the review would require between one and four additional months to complete. Second Breidenbach Decl. Ex. UU.

20. On March 6, 2017, President Trump issued an updated Executive Order, No. 13780, also titled "Protecting the Nation from Foreign Terrorist Entry into the United States" (the "Executive Order"). Second Breidenbach Decl. Ex. FF.

21. The new Executive Order replaces the original executive order and will take effect on March 16, 2017. Second Breidenbach Decl. Ex. FF §§ 1(i), 14.

22. As indicated by numerous statements made by President Trump and his advisors, the new Executive Order reflects the same purpose as the original January order: to ban entry by Muslims into the United States. Second Breidenbach Decl. ¶¶ 6, 13–14.

23. The Executive Order contains the same provisions that the Government previously interpreted to require it to stop processing derivative asylum petitions. Second Breidenbach Decl. Ex. FF.

24. On its face and as interpreted by the Government, the new Executive Order harms Plaintiff by prohibiting the issuance of travel documents that Plaintiff's wife and daughter would need to be reunited with Plaintiff in the United States and by prohibiting them from entering the United States. Doe Decl. ¶¶ 25–26; Second Breidenbach Decl. Ex. RR.

25. On March 6, 2017, the day the new Executive Order was signed, Plaintiff's counsel contacted counsel for Defendants to inquire as to the effect of the new order on Plaintiff's pending petitions. Plaintiff's counsel requested an answer to the following questions by Wednesday, March 8 and advised that Plaintiff would take the Government's non-response as an indication that the Executive Order impacts his petitions:

- Please state whether the Government will continue to process derivative asylum petitions for beneficiaries residing in Syria once the new Executive Order takes effect.

- Please state whether the new Executive Order applies to the pending derivative petitions or otherwise affects our client's wife's and daughter's ability to enter the United States in any manner, including but not limited to, by delaying or barring the Government from processing the applications or delaying or barring the Department of State from interviewing or issuing travel documents to our client's wife and daughter;

- If the new Executive Order <u>does</u> affect the pending derivative applications or otherwise affects our client's wife's and daughter's ability to enter the United States in any manner, please identify which provisions of the Executive Order does so; and

- If the new Executive Order <u>does</u> <u>not</u> apply to or otherwise affect our client's wife's and daughter's ability to enter the United States in any manner, please identify the provisions of the Executive Order that make this clear.

Second Breidenbach Decl. Ex. UU.

26. Despite three follow-up emails, three unanswered calls, and three voicemail messages, the Government has not responded substantively to these questions as of this filing, other than to ask whether Plaintiff's wife and child are currently in Syria or Lebanon. Second Breidenbach Decl. ¶ 19 & Ex. UU.

27. The text of the Executive Order confirms that, once it becomes effective, it will bar the processing of Plaintiff's derivative petitions and/or the entry of Plaintiff's wife and child into the United States: (A) Under Section 2(c) of the Executive Order, Plaintiff's wife and daughter, as Syrian nationals, are barred from entry for a minimum of 90 days (starting on the Order's effective date). (B) Section 3(a) also makes clear that Plaintiff's wife and daughter are subject to the ban on entry because they (i) will be outside the United States on March 16, 2017; (ii) did not have a valid visa at 5:00 p.m., eastern standard time on January 27, 2017; and (iii) will not have a valid visa on March 16, 2017.

28. It will take at least 30 days from February 24 for Plaintiff's petitions to arrive in Jordan, which means that Plaintiff's wife and child will not have a visa by March 16, 2017. Second Breidenbach Decl. Ex. UU.

29. Plaintiff's wife and daughter do not fall under any of the exceptions in Section 3(b) of the Executive Order, because they will not, as of March 16, be: (i) lawful permanent residents of the United States; (ii) admitted to or paroled into the United States; (iii) in possession of travel documents other than a visa that permits them to travel to the United States and seek entry or admission, such as an advance parole document; (iv) dual nationals of a non-designated country; (v) in possession of diplomatic or diplomatic-type visas, North Atlantic

6

Treaty Organization visa, C-2 visa for travel to the United Nations, or G-1, G-2, G-3, or G-4 visa; or (vi) asylees, refugees admitted to the United States, or individuals who have been granted withholding of removal, advance parole, or protection under the Convention Against Torture. Doe Decl. ¶ 26.

30. The discretionary waiver provisions under Section 3(c) of the Executive Order also do not help Plaintiff's wife and daughter because they must "demonstrate[] to [a Government] officer's satisfaction that denying entry during the suspension period would cause undue hardship, and that [their] entry would not pose a threat to national security and would be in the national interest." Moreover, the case-by-case waiver procedure will, as a practical matter, increase the amount of time for completion of the visa process, needlessly depriving Plaintiff of a reunion with his wife and daughter.

31. By the Government's own concessions in its February 16 response, Plaintiff's wife and daughter are not refugees, so they are ineligible for a waiver under Section 6(c) of the Executive Order. Dkt. No. 23.

32. Guidance issued by DHS in connection with the release of the new Executive Order indicates that Plaintiff's petitions will be harmed:

> **Can the exception for refugee admission be used for Refugee/Asylee Relative Petitions (Form I-730) cases where a family member is requesting a beneficiary follow to join?**
>
> No. Individuals who already have valid visas or travel documents that permit them to travel to the United States are exempt from the Executive Order. To the extent that an individual does not yet have such documents, please contact the Department of State.

Second Breidenbach Decl. ¶ 15.

33. The new Executive Order irreparably harms Plaintiff because it separates Plaintiff from his spouse and surviving child. Doe Decl. ¶¶ 4–7, 12, 14–19, 24–26.

7

34. The new Executive Order subjects Plaintiff's wife and daughter to further suffering due to a current lack of adequate medical and humanitarian services in Aleppo and to an imminent risk of rape and death. Doe Decl. ¶¶ 4–7, 12, 14–19, 24, 28–29.

35. Plaintiff's wife and daughter cannot leave Syria until they are officially invited for an interview at the U.S. Embassy in Amman, because only then will border authorities permit them to cross into Jordan. Doe Decl. ¶¶ 25–27.

36. Plaintiff's wife and daughter remain in hiding in Aleppo, where deadly fighting continues unabated. Doe Decl. ¶¶ 24, 28.

37. In late February, for example, Free Syrian Army forces bombed the neighborhood where Plaintiff's wife and daughter live. Doe Decl. ¶ 28. In July 2015, Plaintiff's two year old son fell three stories to his death while attempting to seek shelter during an artillery attack on their home. Doe Decl. ¶ 19.

38. Since February 24, Plaintiff has finalized arrangements for the (very dangerous) transport of Plaintiff's wife and daughter to Jordan, so that they may make the necessary trip once invited by the U.S. Embassy in Jordan. Doe Decl. ¶ 27.

Dated: New York, New York
March 10, 2017

Respectfully submitted,

By:   /s/ Vincent Levy
HOLWELL SHUSTER & GOLDBERG LLP
Vincent Levy (vlevy@hsgllp.com)
Lauren Giudice (lgiudice@hsgllp.com)
Andrew Breidenbach (abreidenbach@hsgllp.com)
Andrei Vrabie (avrabie@hsgllp.com)
Matthew V.H. Noller (mnoller@hsgllp.com)
Sarah Sternlieb (ssternlieb@hsgllp.com)
Kevin Benish (kbenish@hsgllp.com) (*law clerk –
New York State Bar admission pending*)
750 Seventh Avenue, 26th Floor
New York, NY 10019
(646) 837-5151

PINES BACH LLP
Lester A. Pines, SBN 1016543
Tamara B. Packard, SBN 1023111
Alison TenBruggencate, SBN 1018869
122 West Washington Ave., Ste. 900
Madison, WI 53703
(608) 251-0101 (telephone)
(608) 251-2883 (facsimile)
lpines@pinesbach.com
tpackard@pinesbach.com
atenbruggencate@pinesbach.com

*Attorneys for Plaintiff*